IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID COREY** | : | |
| | : | Case No. 13-CV-00660 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge King |
| **ALLERGAN, INC.,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration (Doc. 3), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. For the reasons set forth herein, Defendant's Motion is **GRANTED**.

### I. BACKGROUND

Plaintiff, David Corey, was hired by Defendant, Allergan, Inc., as a sales representative in November 2007. The joint Defendant, whose name is disputed by the parties, Shelley Miller or Michelle Russell, was Plaintiff's former manager while he worked at Allergan. (Doc.7 at 2, Doc. 3 at 1). At the start of Plaintiff's employment, the parties executed a "Mutual Agreement to Arbitrate Claims" ("Agreement") wherein both Plaintiff and Allergan agreed to arbitrate any employment-related claims. (Doc. 3-1 at 2). Specifically, the parties agreed to resolve disputes:

> arising out of or relating to the employment relationship or termination of employment,  including any claims of discrimination or harassment in violation of any federal or state law and any other aspect of the employee's compensation, training, or employment

through "binding arbitration." (*Id*.).

From November 2007 until his termination in June 2012, Plaintiff worked as a Surgical Account Manager for Defendants, primarily responsible for marketing and selling an adjustable

gastric banding system to physicians in Ohio. (Doc. 3 at 3). Plaintiff claims that in or around October 2010, he became aware that Allergan was illegally promoting unapproved uses of products. (Doc. 7 at 6). Plaintiff claims that he was asked to promote the products for unapproved uses, and that he did so for over a year. (Doc. 7 at 6). In January 2012, Plaintiff maintains that he refused to continue marketing the products and the unapproved procedures. (Doc. 7 at 13). Several months later, in June 2012, Plaintiff's manager (Defendant Miller or Russell) informed him that his performance was not up to par, that he could either undergo training or resign, and if he did neither he would be fired. (*Id*.). Plaintiff requested a few days to think about it, but the next day he received a termination letter from Defendants. (*Id.* at 14).

Following his termination, Plaintiff filed an eleven count complaint in the Franklin County Court of Common Pleas against Defendants, which includes action for retaliation, gender-based employment discrimination, and wrongful discharge. (Doc. 7 at 14-21). Pursuant to Defendant's motion, the case was removed to this court.

## II. STANDARD OF REVIEW

Under the FAA, "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle a controversy thereafter . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts are to "examine the language of the contract in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In examining the contract:

> [f]irst, [the Court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

2

*Id.* at 714; *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

When all claims fall under the scope of an arbitration agreement, courts are to dismiss the action without prejudice, as the Court has no role in the action other than to enforce an arbitration award. *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 757 (S.D. Ohio 2002). Under the terms of the FAA, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-HAUL Co. of Mass. and Ohio, Inc.*, No. 2:13-CV-1265, 2014 WL 1670099, at *4 (S.D. Ohio April 23, 2014) (citing *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)).

## III.  ANALYSIS

Pursuant to the FAA, Defendants move this Court to dismiss Plaintiff's Complaint without prejudice and to order arbitration in accordance with the parties' Agreement. (Doc. 3 at 3). In support of their motion, Defendants argue that the Agreement must be enforced by this Court because: (1) all claims brought by Plaintiff in his Complaint arise out of or relate to his employment and termination; (2) the Agreement was in writing and signed by Plaintiff; and (3) the Agreement affects commerce. (*Id*. at 4-6). Further, Defendants point to the language within the Agreement that states "any legally actionable dispute" between Plaintiff and Defendant is subject to the terms of the Agreement. (*Id*. at 8).

Plaintiff responds that the Agreement is invalid under recognized defenses of general state contract principles, including fraud, duress, and unconscionability, and it is therefore unenforceable. (Doc. 13 at 3).

### A. Enforceability of the Arbitration Agreement

Under the first prong of the *Stout* test, the Court must determine whether the parties agreed to arbitrate. 228 F.3d at 714. Enforceability of an arbitration agreement is reviewed "according to applicable state law of contract formation." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). Contract defenses such as "fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). If the Court is "satisfied that the making of the agreement for arbitration . . . is not [at] issue," the Court shall order the parties to arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4. Once the party seeking to enforce the arbitration agreement meets the burden of showing the existence of a written arbitration agreement, the burden then shifts to other side "to present evidence indicating that the arbitration provision is not valid or that it does not apply to the dispute in question." *Johnson v. Carter*, No. 2:11-CV-493, 2012 WL 666089, at *4 (M.D. Ala. Feb. 13, 2012), *report and recommendation adopted*, No. 2:11-CV-493, 2012 WL 652225 (M.D. Ala. Feb. 29, 2012).

Plaintiff argues that at the time he signed the Agreement, Defendants were under investigation for off-label promotion of one of their products and therefore, by not disclosing this fact, Defendant made a fraudulent representation to Plaintiff. (Doc. 13 at 3-4). But Plaintiff offers no factual support for his allegation that the Defendants were in fact under investigation. Further, Plaintiff does not allege that in signing the Agreement, he relied to his detriment on the

4

fact that Defendants were not under investigation. Agreement. The Court cannot merely assume that, had Plaintiff known of the alleged investigation, he would have refused to sign.

Moreover, Plaintiff misunderstands the general state law contract principles under which the Court can invalidate the Agreement. In order successfully to assert a defense of fraud, duress, or unconscionability, Plaintiff must show that he has a defense as to the *making* of the Agreement itself, not to subsequent events. *See Fazio*, 340 F.3d at 393 (fraud); *ODW Logistics, Inc v. Karamloop, Inc.*, No. 2:12-CV-00996, 2013 WL 3475163, at *3 (S.D. Ohio July 10, 2013) (duress); *Scovill v. WSYX/ABC, Sinclair Broadcasting Group, Inc.*, 425 F.3d 1012, 1015-16 (6th Cir. 2005) (unconscionability). Yet, Plaintiff argues that the fraud, duress, and/or unconscionability occurred only during Plaintiff's employment with Allergan, subsequent to his making the Agreement. Indeed, Plaintiff signed the Agreement in November 2007. The incidents of fraud, duress, and unconscionability, claimed by Plaintiff did not begin, according to him, until approximately October 2010. (Doc. 7 at 18).

In addition, Plaintiff offers no allegations that he entered into the Agreement unknowingly or involuntary, or that Defendants ever threatened or coerced him. Nor has he provided support to show that the terms of the Agreement are in any way substantively unfair to him. Accordingly, the Court concludes that the Agreement is enforceable.

### B. Scope of the Agreement

Under the second prong of the *Stout* test, the Court must next determine the scope of the agreement. *Stout*, 228 F.3d at 714. Generally, employment contracts fall under the FAA and the agreement can subject all employment-related claims to arbitration. *See Byrd v. CIGNA Healthcare,* No. 1:00-CV-337, 2002 WL 32059026, at *4 (E.D. Tenn. Feb. 8, 2002) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)). For an arbitration to be imposed, all

claims sought must fall within the scope of the terms agreed to by the parties. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

The parties in this case specifically choose and agreed upon language that would subject all employment related claims to arbitration. The Agreement provides that all claims "arising out of or relating to the employment relationship or termination of employment" are subject to arbitration. (Doc. 3-1 at 2). Federal courts have interpreted the phrase "arising out of or relating to" as broadly applying to tort actions, rendering such claims arbitrable under arbitration agreements. *See, e.g.*, *Parsley v. Terminex Int'l Co, L.P.*, No. C-3-97-394, 1998 WL 1572764, at *6-7 (S.D. Ohio. Sept. 15, 1998). The Court must "'focus on the factual allegations in the complaint rather than the legal causes of action asserted,'" to determine whether the claims raised by Plaintiff "stem from [the] performance of the [] contract." *Id.* (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987)).

All of Plaintiff's claims (retaliation, gender-based employment discrimination, wrongful discharge, civil conspiracy, tortuous interference with contract, intentional and negligent infliction of emotional distress, negligent supervision, negligent retention, negligent hiring and training, respondent superior, and equitable and promissory estoppel) are based on and flow from his employment relationship with Defendants. Plaintiff's entire Complaint is grounded on incidents that occurred while acting as an employee of Allergan. Moreover, the Agreement here specifically covers "claims of discrimination or harassment in violation of any deferral or state law and any other aspects of the employee's compensation, training, or employment." (Doc. 3-1 at 2). Considering "the broad language of the arbitration clause and the policy of resolving doubts in favor of arbitration," *Parsley*, 1998 WL 1572764 at *7, the Court finds that the phrase "arising out of or relating to" encompasses all Plaintiff's claims here, both in contract and in tort.

6

The terms of the Agreement leave little doubt that the parties intended that all disputes regarding Plaintiff's employment or his termination, including the instant dispute, would be resolved exclusively by arbitration. As such, Plaintiff has offered no reason to avoid the Agreement in which both parties knowingly entered.[1]

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration (Doc. 3) is **GRANTED**. The case is hereby **DISMISSED WITHOUT PREJUDICE**. The parties shall proceed to arbitration.

**IT IS SO ORDERED.**

            <u>s/ Algenon L. Marbley</u>
            **ALGENON L. MARBLEY**
            **UNITED STATES DISTRICT JUDGE**

**DATED: September 12, 2014**

---

[1] Under the third and fourth prong of the *Stout* test, if federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be nonarbitrable and if so, the Court must determine whether to stay the remainder of the proceedings pending arbitration. 228 F.3d at 714. But Plaintiff does not argue that any of his claims are federal statutory claims, and the Court accordingly finds that the third and fourth prongs provide no reason to prevent arbitration in this case.